**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Eddie Hudson, III,<br><br>    Plaintiff,<br><br>v.<br><br>Kristen Gyolai, Field's Law Firm;<br>James K. Heling; XL Insurance w/c by<br>Corvel Corporation; and Trillium Staffing,<br><br>    Defendants. | Case No. 19-CV-2492 (PAM/DTS)<br><br>**ORDER AND**<br>**REPORT AND RECOMMENDATION** |

      This action comes before the Court on Plaintiff Eddie Hudson, III's (1) Amended Complaint, ECF No. 13; (2) Application to Proceed in District Court Without Prepaying Fees or Costs, ECF No. 2 (IFP Application); (3) "Motion for a Court Appointed Lawyer Civil," ECF No. 15 (Counsel Motion); and (4) letter to this Court dated February 19, 2020, ECF No. 16 (Amendment Request).  For the following reasons, the Court denies the Counsel Motion and the Amendment Request and recommends dismissing the Amended Complaint and denying the IFP Application as moot.

**I.     BACKGROUND**

    **A.     Procedural History**

      Hudson filed this action's original complaint, along with the IFP Application, on September 10, 2019.  *See* Compl. 1, ECF No. 1; IFP Appl. 1.[1]  On November 6, 2019, the Court entered an order stating that it "[did] not see how [the Complaint's] allegations, without more, state[d] a cause of action for which this Court [could] grant relief."  Order 4,

---

[1] As numerous filings in this case are not consecutively paginated, citations throughout this Order and Report and Recommendation use the page numbers provided by the Court's CM/ECF filing system.

ECF No. 7 (Nov. 2019 Order). The Court thus ordered Hudson to file an amended complaint. *See id.* at 6. The Court also denied a motion from Hudson seeking appointment of counsel but did refer Hudson to the Federal Bar Association's Pro Se Project (PSP). *See id.* at 4–5.

On November 19, 2019, Hudson moved for an extension of time in which to file an amended complaint. *See* Mot. 1, ECF No. 9. That motion reported that Hudson was "working with the [PSP] to hopefully consult with a volunteer attorney on this case." *Id.* at 2. The Court granted that motion, giving Hudson until February 4, 2020, to file his amended complaint. *See* Order 1, ECF No. 11.

By January 13, 2020, the Court learned that the PSP had been unable to find an attorney who would agree to represent Hudson. The Court sent Hudson a letter explaining this, indicating that the Court was withdrawing its PSP referral, and reminding Hudson of the February 4 amended-complaint deadline. *See* Letter from Court to Hudson (Jan. 13, 2020), ECF No. 12. Hudson filed the Amended Complaint on February 3, 2020. *See* Am. Compl. 1.

**B.    Amended Complaint**

This suit's focus is compensation paid to Hudson following a work-related accident. On April 16, 2014, Hudson was working for Defendant Trillium Staffing (Trillium), his former employer, as a truck driver. *See* Am. Compl. 2, 5. He suffered an accident that caused him "several debilitating injuries," including a "[t]raumatic [b]rain injury." *Id.* at 5. Within a week, Hudson hired Defendant Kristen Gyolai—then an attorney with Defendant Field's Law Firm—to represent him in a workers'-compensation claim. *Id.* at 2, 5.

Hudson alleges that on the day of a hearing in his workers'-compensation matter, Gyolai "suddenly" and "abruptly" wanted him to drop certain claims and was unprepared to "argue [his] claims in court." *Id.* at 7. After Gyolai allegedly indicated that she was

2

unprepared to proceed with the hearing, Hudson and Gyolai met and Gyolai ordered him to "fire her" (which Hudson apparently did). *Id.* Afterwards, Hudson states, the judge at the hearing "put a court order on the [workers'-compensation] claim assuring and stating the claim should not be settled without an attorney because of [Hudson's] cognitive conditions." *Id.* at 7–8.

Within a few days, Gyolai filed an attorney's lien on Hudson's workers'-compensation claim. *See id.* at 8. Hudson says that this lien was illegally large and prevented Hudson from getting other lawyers to consider his claims. *See id.* As a result, he claims, he had to (and did) rely on Defendant James K. Heling for legal advice, even though Heling was the attorney for Trillium and its insurer, Defendant "XL Insurance w/c by Corvel Corp." *See id.* at 8–9.

As the Court understands it, the end result of the negotiation process between (among others) Hudson, Trillium, and Trillium's insurers was a "Stipulation" entered into by Hudson that ostensibly resolved his claims but harmed him in several ways. *See, e.g.*, *id.* at 11 ("The [s]tipulated agreement was void of several benefits that are given to injured workers for loss of income, personal injury and medical care [u]nder Minnesota [workers'-compensation] laws."); *id.* at 13 ("Although Medicare laws clearly state [that] Medicare does not pay for 3rd party injuries caused from a work injury, the verbiage the defendants left out of the stipulation [i]s causing me harm to my current benefits and have been causing harm since the settlement . . . .").

Hudson explicitly lists eight causes of action: (1) fraud, (2) undue influence, (3) breach of contract, (4) breach of fiduciary duty, (5) abandonment, (6) financial exploitation, (7) isolation, and (8) obtaining a signature by coercion. *See* Am. Compl. 16–20. Construing the Amended Complaint liberally—as the Court must, *see, e.g.*, *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (noting court's duty to

3

construe pro so filings liberally (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)))—Hudson's allegations include at least one reference to slander, and also suggest possible legal-malpractice claims. The Court will therefore consider those potential claims as well.[2]

As the Court understands the Amended Complaint's request for relief, *see* Am. Compl. 24–28, Hudson asks for three things. First, he argues that he should receive compensatory damages of $1.5 million, plus the "actual cost of [a] past due bill owed to Medicare." *Id.* at 26–27. Second, Hudson appears to be asking for $2.6 million in punitive damages. *See id.* at 27.[3] Third, Hudson asks this Court to "reverse or rescind the Stipulation." *Id.*

### C.   Counsel Motion and Amendment Request

Hudson filed the Counsel Motion alongside the Amended Complaint. *See* Counsel Mot. 1. The Counsel Motion asks the Court to appoint a lawyer for Hudson. *See id.* at 1–3.

On February 19, 2020, Hudson filed the Amendment Request. *See* Am. Request 1. This essentially asks the Court to amend an error in the Amended Complaint. *See id.* The Amended Complaint states that Hudson "would ask the court to renew or

---

[2] Hudson filed almost 200 pages of exhibits alongside the Complaint. *See* Exs., ECF Nos. 13-1 to -21. Furthermore, Hudson also filed two CDs of material that he characterizes as an "FBI Investigation." Placeholder for Physical Object Being Filed, ECF No. 14. To the extent that Hudson asks the Court to review these materials to find other potential causes of action (or other potential defendants), the Court declines the invitation. As this Court has explained to Hudson before, it is not the Court's job to look through supplemental materials to develop Hudson's complaint. *See* Nov. 2019 Order 3 (citing *Elias v. Lichinov*, No. 19-CV-7457 (MWF/JC), 2019 WL 4140983, at *2 (C.D. Cal. Aug. 29, 2019); *Murrin v. Avidigm Capital Grp., Inc.*, No. 07-CV-1295 (PJS/RLE), 2008 WL 11463468, at *10 (D. Minn. Sept. 5, 2008)).

[3] At one point in the Amended Complaint, Hudson says that he is requesting total damages of $3.6 million. *See* Am. Compl. 27. The Amended Complaint is not entirely clear, but the Court believes that, given the figures cited in the text, the total amount of damages that Hudson seeks is actually $4.1 million plus the amount of Hudson's past-due Medicare bill.

4

rescind the stipulation for *not* causing harm and Elder abuse against me," and Hudson asks that the Court disregard the "not" in that sentence. *See* Am. Compl. 27; Am. Request 1.

## II. ANALYSIS

### A. Counsel Motion

As a preliminary matter, the Court denies the Counsel Motion. As the Court explained to addressing Hudson's earlier request for counsel:

> "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (citing *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985)); *see also In re Lane*, 801 F.2d 1040, 1042 (8th Cir. 1986) ("The decision to appoint counsel in civil cases is committed to the discretion of the district court.") (citing *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984)). When deciding whether to appoint counsel, among the factors the Court considers are the case's factual and legal complexity, the litigant's ability to present his claims, whether the litigant and the Court would benefit from having the litigant represented by counsel. *McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997); *Johnson v. Williams*, 788 F.2d 1319, 1322–23 (8th Cir. 1986). At the present time, the Court cannot conclude that this case's factual and legal complexity are such that counsel should be appointed, nor can the Court determine whether the Court would benefit from having Hudson represented by counsel.

Nov. 2019 Order 4–5.

The Amended Complaint does not change the Court's earlier analysis. Indeed, if anything, the Amended Complaint makes it clearer that the Court would not benefit from having Hudson represented by counsel. To preview the discussion below: At this point, the key problem for Hudson is not an inability to describe his claims to the Court. The problem, rather, is that the Court understands what Hudson's potential claims are, but the federal courts lack jurisdiction over them. As a result, the Court denies the Counsel Motion.

5

### B. Amendment Request

The Court construes the Amendment Request as a motion to amend the complaint. Under this District's Local Rule 15.1(b), "[a]ny motion to amend a pleading must be accompanied by: (1) a copy of the proposed amended pleading, and (2) a version of the proposed amended pleading that shows—through redlining, underlining, strikeouts, or other similarly effective typographic methods—how the proposed amended pleading differs from the operative pleading." Hudson has done neither of these things, and given the Local Rule's mandatory nature, the Court therefore denies the Amendment Request.

The Court nevertheless believes that, given its duty to construe pro se filings liberally, it can take Hudson's requested edit into account. The Amended Complaint's relevant sentence is counterintuitive if one treats the "not" as intentionally included. *See* Am. Compl. 23. Indeed, if Hudson had not filed the Amendment Request, the Court likely would have viewed the "not" as a typographical mistake. As a result, while the Court is denying the Amendment Request, it will understand the relevant sentence as Hudson requests.

### C. Amended Complaint

Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." After reviewing the Amended Complaint, the Court concludes that it lacks subject-matter jurisdiction over this action.

Hudson suggests that this Court has jurisdiction over this action because of the federal courts' diversity jurisdiction under 28 U.S.C. § 1332. *See* Am. Compl. 1. Under § 1332(a), in relevant part, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." Given the amount of damages that Hudson

6

seeks, the Amended Complaint appears to meet the so-called amount-in-controversy requirement. But this leaves open the question of whether the Amended Complaint is a civil action between "citizens of different States."

For a civil action to be between "citizens of different States" for diversity-jurisdiction purposes, there must be "complete diversity" between the parties: no defendant may be from the same state as any plaintiff. *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) (citing cases); *Rodriguez v. Tiffany & Bosco, LP*, No. 19-CV-1279 (WMW/ECW), 2019 WL 7562616, at *2 (D. Minn. Dec. 2, 2019) (same), *report and recommendation adopted*, 2020 WL 128462 (D. Minn. Jan. 10, 2020). The Amended Complaint plainly does not present complete diversity between the parties: Hudson identifies all the parties as being from Minnesota. *See* Am. Compl. 1–2. Because this case does not feature complete diversity, § 1332 does not give this Court jurisdiction over this action.

The main alternative path to federal subject-matter jurisdiction is "federal question" jurisdiction under 28 U.S.C. § 1331.[4] Under § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Two types of matters meet this standard: (1) cases in which "federal law creates [a] cause of action asserted"; and (2) cases in which a state-law claim "'necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance' of federal and state power." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1569 (2016) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (brackets in *Manning*)); *see also Bethune*, 2020 WL 1558156,

---

[4] The Amended Complaint does not try to rely on federal-question jurisdiction, but the Court will consider it as well, given the Court's duty to construe pro se filings liberally.

7

at *2 (applying similar test (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983))).

Federal law does not create any of the asserted causes of action in this matter. Fraud, breach of contract, breach of fiduciary duty, slander, and legal malpractice are all classic state-law causes of action. And while the Court is unsure whether Hudson's other suggested claims (undue influence, abandonment, financial exploitation, isolation, and obtaining a signature by coercion) actually correspond to Minnesota-law causes of action, nothing in the Complaint suggests that these causes of action spring from the U.S. Constitution or federal law or treaties. *See generally* Am. Compl. 12–20 (presenting causes of action; no citations to U.S. Constitution or federal laws or treaties). Furthermore, review of the Amended Complaint does not suggest that any of Hudson's causes of action are state-law claims that necessarily raise a federal-law issue. As a result, federal-question jurisdiction under § 1331 does not exist here.

As neither diversity jurisdiction nor federal-question jurisdiction apply here—and because the Court is unaware of any other plausible jurisdictional ground—the Court concludes that it lacks subject-matter jurisdiction over this action. The Court thus recommends dismissing this action without prejudice. Given this recommendation, the Court also recommends that the IFP Application be denied as moot.[5]

### ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

---

[5] The Court is sympathetic to Hudson's plight, and offers no opinion whatsoever on the chances Hudson would have if he were to sue Defendants in state court. But whatever this Court's sympathies, it cannot ignore the plain limits on its subject-matter jurisdiction—limits that compel this Court's recommendation that this action be dismissed.

1. Plaintiff Ernie Hudson, III's "Motion for a Court Appointed Lawyer Civil," ECF No. 15, is **DENIED**.

2. Hudson's letter to this Court dated February 19, 2020, ECF No. 16, construed as a motion to amend the Amended Complaint, ECF No. 13, is **DENIED**.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

1. Hudson's Amended Complaint be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

2. Hudson's Application to Proceed in District Court Without Prepaying Fees or Costs, ECF No. 2, be **DENIED** as moot.

Dated: April 15, 2020                       s/David T. Schultz
                                            DAVID T. SCHULTZ
                                            U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).